# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DEC 3 1 2014

~~for~~ CHIEF JUSTICE



This opinion was filed for record
at 8:00am on Dec. 31, 2014

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 90567-3 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JOEY ANTHONY ANDY, | ) | |
| | ) | Filed DEC 3 1 2014 |
| Appellant. | ) | |
| | ) | |

OWENS, J. — In Washington, criminal defendants have the right to a public trial. CONST. art. I, § 22. Courtrooms may be closed only in certain limited circumstances. Today, we evaluate whether a potential obstacle to public access constituted a courtroom closure. The potential obstacle in this case was a sign that listed the courthouse hours. Defendant Joey Andy argues that because the sign listed a specific closing time and his criminal trial proceedings continued after the listed closing time, the sign constituted a courtroom closure. However, the evidence shows that at all times during Andy's trial proceedings, the door to the courthouse was unlocked and no member of the public was deterred from attending the proceedings

by the sign. Therefore, we conclude that the sign did not constitute a courtroom closure and Andy's public trial right was not violated.

FACTS

After a jury trial in Yakima County Superior Court, Andy was convicted of first degree burglary and second degree assault. He appealed, claiming that his public trial right was violated when proceedings on some days continued after 4:00 p.m. despite the new 4:00 p.m. closing time for the courthouse. Pursuant to RAP 9.11, Andy moved to remand the case to the superior court to take "additional evidence to determine whether the courthouse doors were locked at 4 p.m. on the dates of the trial . . . and if so, whether that closure barred entry to the ongoing courtroom proceedings." Mot. to Remand, No. 31018-3-III, at 1 (Wash. Ct. App. Mar. 5, 2013). The Court of Appeals commissioner granted the motion. As described below, the superior court entered findings of fact that the answer to both questions was no.

At the hearing, the superior court heard from six witnesses who primarily testified regarding general courthouse policies and procedures. Courthouse security personnel testified that the courthouse entrances and hours were restructured in October 2011 to address security and staffing issues. At that time, two entrances were closed and a permanent security station and metal detector were added to the remaining entrance. In addition, the board of county commissioners changed the

courthouse hours to 8:00 a.m. to 4:00 p.m. for staffing reasons. The previous hours were 8:00 a.m. to 5:00 p.m.

Lieutenant Brian Winter, the individual responsible for security at the Yakima County courthouse, testified that during June 2012, a paper sign was posted on the courthouse door listing the courthouse hours. He read the sign into the record as follows:

> [T]he courthouse closes at 4:00 p.m. Office hours, auditor 9:00 to 3:30, HR, which was human resources, 9:00 to 4:00, district court clerks 8:00 to 4:00, superior court clerks 8:30 to 4:00. All others 8:00 to 4:00. The bottom line on the document says court closes at 5:00 p.m.

1 Verbatim Report of Proceedings, Reference Hearing (VRP-RH) at 152.[1]

Despite the new courthouse hours, the superior court judges insisted that the building needed to be open while court was in session. To accommodate the judges, courthouse security created a set of policies to ensure that the building doors remained open while court was in session.

First, if court continued past 4:00 p.m., a court clerk would call security to let them know that court was still in session. Second, at the end of each day, security would check every courtroom to make sure all trial proceedings had ended prior to locking the courthouse doors. If any courtroom was in session, the courthouse doors

---

[1] The sign has since been changed. Beginning in approximately March 2013, the bottom line of the sign indicated "courtrooms are open while in session" rather than "court closes at 5:00 p.m." VRP-RH at 165.

would remain open. Other mechanisms that courthouse security used to track whether court was in session were calling the court clerks to find out the estimated duration of ongoing proceedings and using security cameras to monitor whether a Department of Corrections transport vehicle was still on the premises.

If trial proceedings continued after 4:00 p.m., the doors remained open and anyone entering the building was greeted by a security guard. If people entering the building wanted to observe a trial proceeding, they were allowed in. If they wanted to visit any other department, they were told it was closed. The officer testified that a person who wanted to attend court was not required to know the specifics of the court hearing; "[a]ll they'd have to do is indicate they're here for court and they're allowed into the building." *Id.* at 124.

The trial court then heard testimony regarding the effect of the sign from an officer who worked the afternoon and evening shift at the security station near the courthouse's glass door entrance. The officer testified that he was able to see anyone coming up to the entrance and had never seen a person read the sign and walk away without trying the door. The officer testified that "[t]here have been numerous times that somebody has walked up to the door, read the sign and walked right in regardless of what it said." *Id.* at 126. He said he could not "think of a single time" when he had seen a member of the public walk up, look at the sign, and not try to open the door, even if it was after 4:00 p.m. or 5:00 p.m. *Id.*

4

In addition, witnesses from the courthouse security and administrative team testified that they had never received any complaints from the public about having difficulty attending court proceedings after 4:00 p.m.

Turning to Andy's trial specifically, the transcript shows that his trial ended between 4:00 p.m. and 5:00 p.m. on four dates. The transcript also shows that proceedings ended at 5:41 p.m. on one date (June 11, 2012). The time sheets for the on-duty security officer are consistent with those times. On the dates where proceedings ended between 4:00 p.m. and 5:00 p.m., he worked until 5:00 p.m. He testified that per standard operating procedure, he kept the courthouse doors open until trial proceedings concluded on those days. On the date where proceedings ended at 5:41 p.m., his time sheet indicates that he worked overtime until 6:00 p.m. due to a trial in the courtroom of Judge Gibson (the trial judge in Andy's trial). His time sheet also indicates that he locked the courthouse doors and checked out of his station at 5:46 p.m., which is again consistent with Andy's proceedings ending at 5:41 p.m. The officer testified that he did not have a specific recollection of that particular day, but based on routine procedures, the doors would not have been locked on that day until after Andy's trial proceedings had ended at 5:41 p.m.

Based on the evidence, the trial court found that "the public entrance of the Yakima County Courthouse was open at all times when the Joey Andy trial was in session" and "[a]t no time was the public entrance of the Yakima County Courthouse

closed while the Joey Andy trial was in session." Clerk's Paper at 85. The trial court also found that "[n]o member of the public who desired to attend the Joey Andy trial was prevented from attending any session." *Id.* at 86. With regard to the sign posting the courthouse hours, the court found:

> No member of the public was deterred by the sign . . . from entering the Yakima County Courthouse and attending any session of the Joey Andy trial. In the security officers' experience, members of the public always tried the door despite the sign before walking away from the public entrance. No member of the public was barred from entering the courthouse or attending any session of the Joey Andy trial by the sign.

*Id.* The court concluded that Andy's public trial right was not violated.

Andy appealed, claiming his public trial right was violated. He also filed a pro se statement of additional grounds for review, claiming prosecutorial misconduct, insufficient evidence, due process and confrontation clause violations, and abuse of authority by the trial court. The Court of Appeals certified the case to us, and the commissioner accepted certification.

## ISSUES

A. Was Andy's right to a public trial violated?

B. Are Andy's additional grounds for review supported by evidence and legal authority?

ANALYSIS

A.  *Since Andy Has Not Shown That a Courtroom Closure Occurred, There Is No Public Trial Right Violation*

   1.  *Standard of Review and Burden of Proof*

Criminal defendants have the right to a public trial. CONST. art. I, § 22. Defendants can raise claims of public trial rights violations for the first time on appeal. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). We review such claims de novo. *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006). In general, findings of fact by the superior court are verities on appeal if supported by substantial evidence. *See State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997).

We recently reiterated that the defendant has the burden of providing a record that shows that a courtroom closure occurred. *See State v. Koss*, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014); *State v. Slert*, 181 Wn.2d 598, 608, 334 P.3d 1088 (2014); *State v. Njonge*, 181 Wn.2d 546, 556, 334 P.3d 1068 (2014), *cert. denied*, No. 14-6940 (U.S. Dec. 15, 2014).

   2.  *The Record Does Not Establish That a Closure Occurred*

In this case, the trial judge made findings of fact that the public was able to access the courtroom at all times during Andy's trial and that no member of the public was deterred by the sign posting the courthouse hours. These findings were supported by substantial evidence, since courthouse security directly testified to both matters and

Andy presented no conflicting evidence. On this record, we see no basis for finding a courtroom closure. All of the evidence indicates that the sign presented no obstacle to members of the public who wished to attend the trial.

Andy argues that when reading the sign, "common sense dictates that most people would logically assume admittance is barred after 4 p.m. and leave." Appellant's Br. at 11. While common sense might lead to that conclusion, the evidence in this case directly contradicts that conclusion. Based on testimony from the security guard observing the courthouse entrance, the court found that the sign did not deter any member of the public from accessing the courtroom. Andy does not point to any evidence in the record to support his position; instead, he ignores the evidence presented during the hearing on how the public actually reacted to the sign. We hold that the evidence in this case demonstrates that the sign was not a deterrent to public access, and thus there is no basis for a finding that the courtroom was closed to the public.

### B. Andy's Additional Grounds for Review Are Not Supported by Legal Argument and Evidence

Andy submitted a statement of additional grounds for relief, claiming (1) prosecutorial misconduct, (2) insufficiency of the evidence, (3) violations of the confrontation and due process clauses, and (4) abuse of authority by the trial court. Because these claims are not supported by legal argument and evidence, we deny them on their merits.

*1. Prosecutorial Misconduct Claim*

Andy claims that the prosecutor committed misconduct when he asked the victim (who was admittedly intoxicated at the time of the crime) whether she was "an experienced beer drinker." 1 CD Proceedings (CDP) at 47. Andy argues that this question constituted the prosecutor's personal opinion that the victim was still qualified to testify about what took place despite her intoxication. But the prosecutor made no such statement or implication. The prosecutor asked the question in the context of exploring how much beer the victim had drunk that day. The prosecutor asked how much she and her friends had drunk that day (six 40-ounce beers), whether she was "pretty much drunk" by 4:00 p.m. (she indicated yes), and whether this was more than she normally drank (she said it was about what she usually drank with friends). *Id.* at 46-47. In the context of this line of questioning, simply asking the victim whether she was "an experienced beer drinker" did not constitute a personal opinion regarding the victim's capacity to testify about what happened. Andy has failed to show prosecutorial misconduct.

*2. Insufficiency of the Evidence Claim*

Andy appears to make a general insufficiency of the evidence claim. "Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d

970 (2004). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We defer to the jury "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *Id.* at 874-75. In this case, eyewitnesses, including the victim, testified that Andy angrily entered a hotel room carrying a knife, looking for his girlfriend, and cut the victim's[2] face from her chin to her eye. This evidence is sufficient to support his convictions for assault and burglary.

He also claims that the court failed to fully and properly explain the exact standard of proof, but the jury instructions properly and repeatedly indicated that all elements must be proved beyond a reasonable doubt. He provides no evidence to support his claim.

### 3. Confrontation Clause and Due Process Clause Claim

First, Andy points to a statement in the transcript where his defense attorney acknowledged that he and the prosecutor had a conversation with a police officer outside in the hall regarding a teletype that the officer had received listing the charges for which Andy was being sought. Andy claims that this conversation violated his confrontation clause rights, his due process rights, and his right to be present at all

---

[2] The victim testified that Andy's girlfriend was "like an adopted daughter" to her. 1 CDP at 38.

important stages of the proceedings. Andy provides no authority for his contention that a defendant has the right to be present any time that his defense attorney interacts with a witness outside of the courtroom. He has not shown that the conversation violated any legal standard.

Second, Andy argues that he should have been allowed to raise issues regarding the background of the witnesses to assist the jury in its credibility determination. He points to a portion of the transcript where he was not allowed to present evidence that many of the witnesses to the crime were arrested at the scene on various misdemeanor warrants. In that same transcript, his defense attorney agreed that such information is inadmissible because none of the crimes were felonies or crimes of dishonesty. This is a fairly straightforward application of ER 609, which allows evidence of criminal convictions only when the convictions are for crimes punishable by more than one year or that involve dishonesty. No error appears on this record.

Finally, Andy appears to argue that he should have been allowed to challenge statements made by witnesses that conflicted with the statements they originally gave to police officers. However, the trial judge specifically stated that if a witness had made prior inconsistent statements, it would be admissible. Andy does not present any evidence to support his claim that he was not allowed to challenge witnesses that had made prior inconsistent statements.

11

## 4. *Abuse of Authority Claim*

Andy argues that the trial court abused its authority by allowing his conviction for burglary when—he claims—none of the witnesses were credible. This is simply a reformulation of his insufficiency of the evidence claim, and it fails for the same reasons discussed above.

Andy next argues that the trial court abused its authority when it asked the defense and prosecuting attorneys about the proper wording for the second degree assault jury instruction.[3] The trial judge asked the two attorneys if they knew of any case law addressing whether the word "intentionally" needed to be included in the instruction, and then he asked that they "[g]ive it some thought" so they could discuss it later. 1 CDP at 29-30. Andy claims that by asking this question, the trial court abused its power and the judge should have sought the advice of the legislature, the attorney general, or the Supreme Court regarding the issue. Andy is incorrect. The trial judge appropriately handled a concern about the proper wording of jury instructions by asking the attorneys to look into the issue, with a final decision to be made later. There was no abuse of authority.

---

[3] While Andy was ultimately convicted of first degree assault, not second degree assault, and thus this claim is probably moot, we choose to analyze and dismiss this claim on its merits.

CONCLUSION

When defendants assert public trial rights violations, they have the burden to show that a courtroom closure occurred. In this case, the trial judge made findings of fact that the courthouse was open at all times during Andy's trial and that the sign regarding courthouse hours did not deter the public from attending Andy's trial. Those findings of fact were supported by substantial evidence, including testimony by security officers. On this record, Andy has not shown that a closure occurred. We affirm his conviction.

*State v. Andy*
No. 90567-3

_____
Owens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Johnson, J.

_____
Fairhurst, J.

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.

14