FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL 31  AM 11: 30

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ANEE KARI BREWITT, | ) | No. 76279-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISLAM GAMAL EL DIN | ) | |
| MICHAEL ABDEL GHANI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  July 31, 2017 |
| | ) | |

VERELLEN, C.J. — When Anne Brewitt and Islam Gamal El Din Michael Abdel Ghani dissolved their marriage, they expressly agreed that if Ghani violated any of the contact restraints in the decree or final parenting plan, Brewitt would be entitled to enforce the decree by means of a permanent protection order for herself and the parties' child. After Ghani violated the contact restrictions, Brewitt enforced the decree under chapter 26.09 RCW and obtained a permanent protection order for herself and the child. Ghani appeals, arguing the trial court abused its discretion in including the child in the permanent protection order against him. We disagree and affirm.

## FACTS

In June 2013, Anne Brewitt, an American citizen, and Islam Gamal El Din Michael Abdel Ghani, an Egyptian citizen, married in Egypt. Their son was born in Egypt in April 2014.

Brewitt's 24-page declaration submitted to the trial court stated the following facts. Ghani subjected Brewitt to frequent physical, verbal, and emotional abuse. He would control what she could wear and the temperature of their apartment, and sometimes confined her and their son to their apartment for 15 hours alone, not allowing Brewitt to even open the balcony. Ghani would yell at Brewitt and hit her in the presence of their child. In one incident, Ghani returned home from work in a rage and slapped Brewitt in the face while she sat on the couch with the child. Brewitt attempted to protect the child by shielding him with her body, but Ghani hit both of them. In his declaration, Ghani disputed Brewitt's descriptions of their relationship and his alleged domestic abuse, but he did admit to having slapped her face at least once.

In September 2014, Ghani became enraged after he broke into Brewitt's cell phone and found a picture she had sent to her mother and girlfriend when she was pregnant. The picture showed Brewitt fully dressed but not wearing a veil. Ghani told Brewitt she had three days to leave Egypt without their son and took the child's passport. Brewitt sought assistance from the United States embassy in Cairo. Based on her sworn statement, the United States issued an emergency passport for the child based on the threats to Brewitt's life. The embassy kept Brewitt and the child in a safe place and helped them leave Egypt for the United States on September 15, 2014. They moved to Seattle in October 2014.

Shortly after arriving in Seattle, Brewitt filed for dissolution and a domestic violence protection order in King County Superior Court. The trial court issued a temporary domestic violence protection order for Brewitt and the child and awarded Brewitt temporary custody of the child.

In November 2014, Ghani obtained counsel to appear on his behalf. In January 2015, after two months of negotiations, Ghani agreed for his counsel to accept service of the dissolution pleadings on his behalf and consented to personal jurisdiction in King County. On February 10, 2015, Ghani filed a response to Brewitt's dissolution petition. Brewitt learned for the first time by way of Ghani's response that he had unilaterally obtained a divorce in Egypt on January 17, 2015. Brewitt received no notice of the Egyptian divorce proceedings, nor was she given any opportunity to participate. Ghani subsequently filed an appeal in Egypt, again with no notice to Brewitt, seeking to terminate Brewitt's custody rights on the grounds that she was an apostate.

Ghani filed a CR 12(b)(1) motion to dismiss the child custody action in King County for lack of subject matter jurisdiction. The trial court rejected Ghani's theory that the Egyptian court made a valid custody decision. The court also found that Ghani had "committed frequent and repeated acts of serious domestic violence against [Brewitt]," and that Washington had exclusive continuing subject matter jurisdiction over their son.[1]

On September 1, 2015, a court-appointed parenting evaluator issued a parenting plan evaluation which included recommendations that the parties' son reside with Brewitt, that Brewitt have sole decision-making authority for the child's education, religious upbringing, and nonemergency health care, and that restrictions be placed on Ghani's contact with the child based on a history of acts of domestic violence.

On November 24, 2015, the parties and their attorneys attended a mediation where they agreed to final orders in their dissolution action. Specifically, the parties

---

[1] Clerk's Papers (CP) at 318, 323-24.

agreed to maintain all the existing restraints against Ghani from the temporary restraining order, but those restraints were moved into the decree of dissolution. The parties also agreed that if Ghani violated any of the restraints set forth in the decree, Brewitt had the right to a permanent domestic violence protection order, "which shall include at minimum the provisions set forth in this paragraph 3.15."[2] Paragraph 3.15 of the decree included provisions expressly prohibiting Ghani from contacting Brewitt or their child, "except as set forth in the final parenting plan."[3] The parties' final parenting plan incorporated the parenting evaluator's findings that there was a basis for restrictions and limitations on Ghani's residential time under RCW 26.09.191 based on a history of domestic violence.

Under the final parenting plan, Ghani was permitted to have Skype visitation with his son once a week for 15 minutes. The plan specifically states that Brewitt and Ghani may have contact during the Skype visitation "only to the extent necessary to initiate and facilitate the Skype visitation. If either party needs to reschedule the Skype visitation, the parties may email or use Viber to communicate with each other for this limited purpose only."[4] The plan also specifically states, "The respondent shall be prohibited from discussing the mother or her personal life or any legal matters with the child. If the father violates these provisions or becomes emotional during the call, the mother may terminate the Skype call."[5] At paragraph 3.10 of the parenting plan, the

---

[2] CP at 33.

[3] CP at 32-33.

[4] CP at 7.

[5] CP at 7.

parties agreed that the "father's visitation is contingent upon his compliance with the restrictions set forth in this plan."[6]

After entry of the final orders on December 4, 2015, Ghani almost immediately began violating the contact restraints in the decree of dissolution and parenting plan. Ghani repeatedly contacted Brewitt outside the scope of what was permissible, including inquiries about her personal life, the men she was dating, and the religious upbringing of their son. Ghani also made contact with Brewitt through third parties. He sent Brewitt voice messages "almost every day," and pressured her to play the messages for their son.[7] Ghani also frequently sent Brewitt text messages that were threatening, accusatory, and contained religious overtones.

Despite Ghani's violations of the contact restraints in the dissolution decree, Brewitt did not immediately seek enforcement of the decree. She hoped to handle the situation without involving the court. But Ghani's behavior did not stop, and his violations of the contact restraints escalated. On September 20, 2016, Brewitt filed a motion to enforce the decree of dissolution in which she requested that the court enter the permanent protection order that the parties contemplated in the event that Ghani failed to abide by the terms of the child custody agreements.

On November 19, 2016, a family court commissioner expressly found that Ghani had violated "the no contact provisions in the Decree and the contact allowed under the parenting plan," and that the parties had agreed that both Brewitt and the child would be

---

[6] CP at 9.
[7] CP at 74.

entitled to a permanent protection order.[8] However, the commissioner determined that

the case In re Marriage of Barone[9] "overrule[d] the parties' agreement" and therefore,

"the child shall not be included in the protection order."[10]

Brewitt sought revision of the commissioner's order. On December 16, 2016, a

superior court judge granted Brewitt's motion and entered a permanent protection order

for both Brewitt and her son. The judge "agree[d] with the Commissioner's findings that

the father violated the contact provisions in the decree and final parenting plan," but

found that "the Commissioner's findings that the father's violations should not result in a

permanent protection order that includes the child and mother" were "contradicted by

the plain language of both the final parenting plan and decree of dissolution entered in

this matter."[11] The court further found:

> The decree of dissolution specifically states that if the father violates the
> no-contact provisions, then the mother has, as a matter of right, to obtain
> a permanent domestic violence protection order 'which shall include at
> minimum the provisions set forth in this paragraph 3.15.' The no-contact
> provisions of Paragraph 3.15 specifically cover both the mother and the
> minor child, not just the mother, and include a prohibition against the
> father from having any contact with the minor child. In addition, the
> parties' final parenting plan clearly states that the father's ongoing contact
> and visitation with the child is contingent upon his compliance with the
> restrictions set forth in the plan. The commissioner's decision to enter a
> protection order that excludes the minor child is a clear violation of the
> parties' decree.[12]

---

[8] CP at 131-32.

[9] 100 Wn. App. 241, 996 P.2d 654 (2000).

[10] CP at 132.

[11] CP at 199-200.

[12] CP at 200.

The judge also found that the holding from <u>Barone</u> did not apply to the present facts because the parenting plan was not being modified with the entry of a protection order specifically contemplated by the parties. The judge explained that Brewitt's right to obtain a protection order was "agreed to at the time the parenting plan and decree were entered into,"[13] and that enforcement of the parties' agreement and entering a permanent protection order that included Brewitt and the minor child did "not result in a 'de facto modification' of the final parenting plan."[14]

Ghani appeals.

## ANALYSIS

Ghani argues the trial court misread the parties' child custody agreements by including the parties' son in the permanent protection order. We disagree.

"A trial court's disposition of a case involving rights of custody and visitation will not be disturbed on appeal unless the court manifestly abused its discretion."[15] Evidentiary decisions and decisions to grant or deny a protection order are also reviewed for abuse of discretion.[16] An abuse of discretion "occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[17]

We review the effect of a dissolution as a question of law.[18] When the parties incorporate an agreement into a dissolution decree, we must ascertain the parties'

---

[13] Report of Proceedings (RP) (Dec. 16, 2016) at 20; CP at 200.

[14] CP at 200.

[15] <u>Matter of Marriage of Cabalquinto</u>, 100 Wn.2d 325, 327, 669 P.2d 886 (1983).

[16] <u>Hecker v. Cortinas</u>, 110 Wn. App. 865, 869, 43 P.3d 50 (2002).

[17] <u>Katare v. Katare</u>, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

[18] <u>In re Marriage of Gimlett</u>, 95 Wn.2d 699, 705, 629 P.2d 450 (1981).

intent at the time of the agreement.[19] "If the language of the decree is unambiguous, there is no room for interpretation."[20]

The general rules of construction that apply to contracts and other writings also apply to decrees.[21] "We read a decree in its entirety and construe it as a whole to give effect to every word and part, if possible."[22]

Here, the parties expressly incorporated the parties' final parenting plan into the dissolution decree: "The parties shall comply with the Parenting Plan signed by the court on this date . . . . The Parenting Plan signed by the court is approved and *incorporated as part of this decree.*"[23] The decree expressly states, "The parties agree that if the father/respondent violates any terms of this order, the mother shall [have] the right to obtain *a permanent domestic violence protection order* against the father, *which shall include at minimum the provisions set forth in this paragraph 3.15.*"[24] The provisions of paragraph 3.15 in the decree expressly include both Brewitt and the child:

> Respondent is [r]estrained from causing physical harm . . . and from molesting, harassing, threatening, or stalking *the petitioner or the minor child.*

> Respondent is restrained from harassing, following, . . . and using telephonic . . . or other electronic means to monitor . . . communication *of petitioner or the minor child.*

---

[19] In re Marriage of Smith, 158 Wn. App. 248, 255, 241 P.3d 449 (2010).

[20] Id. at 256.

[21] Id.

[22] Id.

[23] CP at 32 (emphasis added).

[24] CP at 33 (emphasis added).

> *Respondent is* restrained *from coming near and from having any contact whatsoever . . . with petitioner and the minor[ ], except as set forth in the final parenting plan* entered under this cause number.

> . . . .

> Respondent is excluded *from petitioner's residence, workplace, school; the day care or school of the minor child. . . .*

> Respondent is prohibited from knowingly coming within, or knowingly remaining within 500 feet (distance) *of: petitioner's residence, workplace, school; the day care or school of the minor child.*[25]

In addition, the agreed final parenting plan expressly states, "The *father's visitation is contingent* upon his compliance with the restrictions set forth in this plan."[26]

Contrary to Ghani's argument, the trial court did not misread the parties' child custody agreements by including the parties' son in the protection order. When read together, the terms of the decree and final parenting plan unambiguously provide for a permanent protection order for the mother and the child if Ghani violated the contact restraints set forth in the orders. Here, both the commissioner and the superior court expressly found that Ghani violated the contact restraints in the decree and parenting plan. Ghani does not assign error to those findings, so they are verities on appeal.[27]

Ghani argues that under chapter 26.50 RCW, the trial court was restricted to a one-year protection order for the parties' child. Because the order was squarely implemented under chapter 26.09 RCW rather than chapter 26.50 RCW, Ghani's argument fails.

---

[25] CP at 32-33 (emphasis added).

[26] CP at 9 (emphasis added).

[27] In re Marriage of Petrie, 105 Wn. App. 268, 275, 19 P.3d 443 (2001).

While a protection order issued under RCW 26.50.060 restraining a parent from contacting his child is restricted to "a fixed period not to exceed one year," "[t]his *limitation is not applicable to orders for protection issued under chapter 26.09*, 26.10, or 26.26 RCW."[28] Here, Brewitt did not petition for a protection order under chapter 26.50 RCW. Rather, she filed a motion to enforce the terms of the parties' dissolution decree, under which Ghani expressly agreed that Brewitt and the child would be entitled to a permanent protection order if he violated the terms of the parties' child custody orders.[29] The revised protection order expressly recognizes: "[T]he parties agreed in the Decree of Dissolution . . . that the Petitioner has the right to obtain this Order for Protection if Respondent violated the terms of the Decree. *This Order is thus an enforcement of the Decree of Dissolution, not a new/separate action*."[30] Consistent with the agreement of the parties, the court was not limited to a one-year protection order for the child.[31]

Relying on In re Marriage of Stewart,[32] Ghani argues that the trial court erred "in permanently suspending the residential provisions of the parties' [f]inal [p]arenting [p]lan

---

[28] RCW 26.50.060(2) (emphasis added).

[29] See CP at 34 ("Motion to Enforce Decree of Dissolution and for Order of Protection"). RCW 26.09.050(1) expressly authorizes the court to make a "provision for the issuance . . . of the restraint provisions of a domestic violence protection order" in entering a decree of dissolution.

[30] CP at 203 (emphasis added).

[31] See generally Muma v. Muma, 115 Wn. App. 1, 7, 60 P.3d 592 (2002) (Fifty-year no-contact order not "invalid" merely because it purports to extend beyond the one-year period allowable under former RCW 26.50.060 (2000)); City of Seattle v. May, 151 Wn. App. 694, 695, 213 P.3d 945 (2009) (permanent protection order was not invalid when it did not contain language showing a specific finding made by the issuing court satisfying the statutory requirement under former RCW 26.50.060 that for orders exceeding one year the court must affirmatively find that the respondent is "likely to resume acts of domestic violence" against his former spouse and child).

[32] 133 Wn. App. 545, 137 P.3d 25 (2006).

by enforcing a [domestic violence protection order] that terminates contact between the father and minor child."[33] In Stewart, the mother obtained a one-year protection order under chapter 26.50 RCW that served to temporarily suspend the father's contact with the children while she sought modification of their existing parenting plan.[34] The father appealed, arguing that "the protection order amounted to an improper modification of the residential provisions of the parenting plan."[35] This court disagreed and upheld the one-year protection order, holding that a "temporary suspension pending further proceedings is not a de facto modification" of a parenting plan.[36]

Ghani's reliance on Stewart is misplaced. In Stewart, the mother was required to file a petition for a protection order under chapter 26.50 RCW and a separate petition for modification of the parties' existing parenting plan because the plan in that case did not contemplate or include the contingencies present here—specifically, that the father's visitation with the child depended on his compliance with the terms of the plan. Unlike the mother in Stewart, Brewitt was not required to file a separate modification petition because no changes to the terms of the parties' parenting plan were being sought. Rather, Brewitt sought to enforce the agreed upon terms in the parties' dissolution decree under chapter 26.09 RCW. Similarly, here, the entry of the permanent protection order did not "suspend" Ghani's visitation under the parties' parenting plan given that Ghani did not have any rights to visitation with the child once the court made

---

[33] Appellant's Br. at 18.

[34] Stewart, 133 Wn. App. at 549.

[35] Id. at 554.

[36] Id.

undisputed findings that he violated the terms of the plan.

Finally, Ghani argues that in terminating the residential provisions of the parties' parenting plan, the trial court acted against the child's best interest. His argument fails. In fashioning a parenting plan, the trial court exercises discretion and considers the factors of RCW 26.09.187(3)(a) to determine the residential arrangements that best serve the interests of the child. RCW 26.09.187(3)(a)(ii) expressly states that "the court shall consider" the "agreements of the parties, provided they were entered into knowingly and voluntarily." Here, Ghani, while represented by counsel, expressly agreed to the provision that if he violated the contact restraints in the decree and parenting plan, he would forfeit his visitation with the child.

RCW 26.09.191 expressly provides that a "parent's residential time with the child *shall* be limited" if it is found that the parent engaged in "a history of acts of domestic violence as defined in RCW 26.50.010(1)."[37] These limitations must be tailored based on the individual circumstances and could range from limits such as supervised visitation or reduced parenting time, "all the way to suspended parenting time."[38] Furthermore, if a "parent's involvement or conduct may have an adverse effect on the child's best interests," "the court may preclude or limit any provisions of the parenting plan."[39]

Here, the parenting evaluator's report, which was incorporated by reference into the parties' final parenting plan, notes that Ghani has a history of being "unable to focus

---

[37] RCW 26.09.191(2)(a), (b) (emphasis added).

[38] 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 33:23, at 326 (2d ed. 2015).

[39] RCW 26.09.191(3)(g).

solely on developing a relationship with the child without questioning the mother or commenting about her appearance and attire," and that this is "[o]f great concern."[40] Based on this behavior and Ghani's acts of domestic violence, the parenting evaluator recommended the entry of a continuing restraining order to protect Brewitt and the child from Ghani's abuse and harassment. In granting Brewitt's request for enforcement of the dissolution decree and a permanent protection order, the superior court specifically found that the very behavior described by the parenting evaluator was ongoing.[41] Ghani does not assign error to the trial court's findings, so they are verities on appeal.[42]

We conclude the court acted in the child's best interest by enforcing the terms of the parties' agreed child custody orders. In essence, Ghani asks this court to believe his version of events over Brewitt's. But the evaluation of witness credibility is the province of the fact finder and is not reviewable by this court.[43] And the extent to which Ghani believes Brewitt manipulated the situation also involves a credibility determination not reviewable by this court.[44] He contends that Brewitt also violated the contact restraints in the parties' child custody agreements but, unlike Ghani, Brewitt was not subject to the restraints.

---

[40] CP at 374.

[41] RP (Dec. 16, 2016) at 19 ("I read and reviewed all the messages that were submitted as part of this package, and it's clear that Mr. Abdel Ghani has repeatedly engaged in violations of the restrictions that were contained in the parenting plan and in the decree. He keeps trying to draw the mother into conversation to try and talk to her about her feelings, about her appearance, about what she is doing, and none of that is, of course, allowed.").

[42] Petrie, 105 Wn. App. at 275.

[43] See State v. Andy, 182 Wn.2d 294, 303, 340 P.3d 840 (2014).

[44] Id.

Brewitt requests an award of attorney fees under RAP 18.9 for a frivolous appeal. An appeal is frivolous where it presents no debatable issues or legitimate arguments for an extension of law.[45] While Ghani presents several issues on appeal that are not supported by the facts or the law, he also presented some debatable issues. Accordingly, we conclude Brewitt is not entitled to attorney fees and costs on appeal.[46]

Affirmed.

WE CONCUR:

_____

_____
COX, J.

_____
Leach, J.

---

[45] Harrington v. Pailthorp, 67 Wn. App. 901, 913, 841 P.2d 1258 (1992).

[46] We also decline to award Ghani attorney fees and costs on appeal.