# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53505-0-II |
| Respondent, | |
| v. | |
| ANDRE TYRONE CROPPER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Andre Cropper appeals his conviction for second degree assault—domestic violence, following an altercation with his girlfriend.  Cropper argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense.  We disagree and affirm.

## FACTS

The State charged Cropper with one count of second degree assault—domestic violence, based on a fight between Cropper and his girlfriend, Robyn Malgesini, which ended with Cropper punching Malgesini in her face and breaking her left orbital bone.

At trial, Malgesini testified as follows.  In November 2017, Cropper moved into Malgesini's apartment.  One night, Cropper and Malgesini got into an argument, and Malgesini told Cropper to leave but he refused.  Cropper punched Malgesini in the chest and knocked the wind out of her.  Malgesini cried and went to bed.

The next morning, Cropper apologized to Malgesini for the night before, but Malgesini rebuffed his apology and told him she was done with the relationship and he needed to leave.

Cropper refused, so Malgesini decided to leave the apartment herself. She made it down the stairs of the two-story apartment building before realizing she did not have her keys or phone. Malgesini returned to the apartment where she and Cropper began arguing again. Cropper continued to refuse to leave Malgesini's apartment and physically restrained her efforts to leave by grabbing her arms.

When Cropper began grabbing her, Malgesini became scared, screamed for help, and ran to the apartment balcony. She then grabbed a 4-foot-long curtain rod from above the balcony door, pointed it at Cropper, and said, "Leave or let me go." Report of Proceedings (RP) (March 12, 2019) at 142 (Jury Trial Proceedings). Cropper refused. Malgesini pushed the curtain rod toward Cropper and attempted to run around him to get to the front door but was unsuccessful. Cropper grabbed the curtain rod with one hand and punched Malgesini in the left eye with his other hand using a closed fist. Malgesini fell backwards, lost her vision, and crawled toward the balcony. Malgesini called for help, but no one responded.

After a few minutes, Malgesini was able to stand. She went downstairs to a neighbor's, Chelsea Tangen's, apartment. Malgesini's nose was bleeding and her vision was impaired. Tangen called 911 and when law enforcement arrived, they took photographs of her injuries, including fresh bruising on both of Malgesini's arms. Tangen ultimately took Malgesini to the hospital. Malgesini was diagnosed with a severe left orbital bone fracture.

Tangen testified at trial. She recalled that on the morning of the incident between Malgesini and Cropper, Tangen was outside her apartment when she heard Malgesini screaming, "Someone help me." RP (March 12, 2019) at 176. A little while after Tangen heard Malgesini

screaming for help, Malgesini stumbled into Tangen's yard, holding her face. Tangen noticed that the side of Malgesini's face was swollen and dripping blood, and her chest had a large red mark. Malgesini was shaking and kept repeating, "Please, help me. Please call the cops." RP (March 12, 2019) at 178. Malgesini told Tangen that Cropper had punched her in the face and the chest and that she could not see out of her eye. Tangen called 911.

Cropper also testified at trial as follows. Cropper denied punching Malgesini in the chest the night before the assault. On the morning of the incident, he was straightening up the apartment when Malgesini took his phone and left the house for 15 to 20 minutes. When she returned, Cropper patted her down looking for his phone. Malgesini told Cropper she wanted him to leave, and Cropper put his hands in the air and said, "Man, I just want my phone," as he backed up away from her. RP (March 13, 2019) at 246. Suddenly, Malgesini grabbed the curtain rod and came towards Cropper, jabbing him in the penis with the curtain rod. Cropper hopped back and instinctively hit Malgesini in the eye. Malgesini took two steps back, turned around, dropped the curtain rod, and sat down on the floor. She said she was hurt and called for her neighbor. Cropper left the apartment.

In his closing argument, Cropper argued that he punched Malgesini out of self-defense. The trial court issued a self-defense instruction to the jury, and the parties agreed a first aggressor instruction was also appropriate. The jury found Cropper guilty.

Cropper appeals his conviction.

3

ANALYSIS

Cropper argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense when he punched Malgesini in the face, breaking her orbital bone.[1,2] We disagree.

Due process requires that the State prove every element of the charged offense beyond a reasonable doubt. *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). In order to convict Cropper of second degree assault, the State had to prove beyond a reasonable doubt that he intentionally assaulted Malgesini thereby recklessly inflicting substantial bodily harm. RCW 9A.36.021(1)(a). The State also had the burden of proving the absence of self-defense beyond a reasonable doubt. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's

---

[1] Cropper also argues for the first time on appeal that there was insufficient evidence to support the initial aggressor instruction. However, at trial, Cropper agreed that the initial aggressor instruction was appropriate. Under the invited error doctrine, we are precluded from reviewing jury instructions when the appellant has agreed to it. *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005). Accordingly, Cropper's argument fails.

[2] In a Statement of Additional Grounds for Review, Cropper reiterates his version of events and adds additional facts that are not contained in the record on appeal regarding Malgesini's drinking the day preceding and the day of the incident. Cropper raises no additional legal arguments. To the extent Cropper's SAG amounts to a challenge to the sufficiency of the evidence, this issue was adequately raised by counsel, and we will not further address it. RAP 10.10(a).

evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Such inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "We defer to the jury 'on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.'" *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014) (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)).

The jury evaluates evidence of self-defense from the standpoint of the reasonably prudent person, knowing all that the defendant knows and seeing all that the defendant sees. *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). "[T]he degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). Self-defense requires a subjective, reasonable belief of imminent harm from the victim. *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020). The right to self-defense does not permit action done in retaliation or revenge. *Janes*, 121 Wn.2d at 240.

Cropper contends that his punching Malgesini was justified based on her jabbing him with the curtain rod. He relies on his version of events to support his argument and ignores the State's evidence. However, the State's evidence, which we take as true in a sufficiency challenge, shows that the argument turned physical when Cropper restrained Malgesini, leaving bruises on her arms and that Malgesini jabbed Cropper with the curtain rod in an attempt to flee. There is no evidence that Cropper feared he was at risk of imminent harm or that his use of force was necessary under the conditions. Cropper described Malgesini's use of force as "jabb[ing]"

5

No. 53505-0-II

him and did not testify that he was injured in any way. *See* RP (March13, 2019) at 246. The State's evidence shows that Cropper punched Malgesini in the face with a closed fist as she attempted to escape him.

The jury heard both Cropper's and Malgesini's versions of events and rejected Cropper's self-defense theory. We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Andy*, 182 Wn.2d at 303. Based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that Cropper did not act in self-defense when he punched Malgesini in the face and fractured her orbital bone.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

Maxa, J.

Melnick, J.

6