**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84436-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER C. BROWN, | |
| Appellant. | |

BIRK, J. — Christopher Brown was convicted in a bench trial of second degree assault, a class B felony, RCW 9A.36.021(2), based on the trial judge's conclusion he was the person who landed a punch on Jason McDaniel during an altercation escalating into a brawl in Concrete, Washington, breaking the latter's jaw in two places. Appropriately arraying his appeal into six assignments of error challenging certain findings of fact, Brown advances one principal argument, to wit, the State's evidence was constitutionally inadequate to prove beyond a reasonable doubt that Brown delivered the offending blow. We affirm.

Jason McDaniel[1] spent the evening in question in the company of his wife Monica McDaniel, her sister Cheri Ekloff, Cheri Ekloff's then husband Robert Ekloff, her ex-husband Brent Anderson, and Cheri Ekloff's and Brent Anderson's daughter Amanda Anderson. Amanda Anderson was friends with Meagan

---

[1] We will additionally use first names for those participants sharing a surname with others. We do not intend disrespect.

Falconer, the bartender at the Hub Bar in Concrete, where the group had gathered. Falconer was starting a relationship with Brown, and later they came to be in one. Cheri Ekloff attempted to buy another round of drinks for their table, but Falconer refused to serve her additional alcohol. Cheri Ekloff had a "full drink" at the time, and disputed Falconer's right to end her alcohol service in that state of affairs. When Falconer attempted to reclaim Cheri Ekloff's drink, she "just sucked it down." The two exchanged words "not so cordially," whereupon Cheri Ekloff referred to Falconer with an unbecoming epithet. At that point, Falconer excluded Cheri Ekloff from the premises.

Robert Ekloff testified he observed a "verbal altercation out in front of the bar" between Cheri Ekloff and Brown. He testified he approached Brown and proposed, "Let's take this across the street." He testified the two of them walked across the street.

Jason McDaniel testified that on exiting the bar, he saw Robert Ekloff and Brown "in front of each other kind of squaring off like they were—I don't know. They had their feathers up like they were going to fight." Jason McDaniel explained, "So I went up kind of in between both of them, and said, Whoa, whoa. Something to the effect of, you know, Hey, we're just here to have a good time. We don't need to do this."

Brown challenges the sufficiency of the evidence to support the trial court's findings concerning what happened once Jason McDaniel arrived, which state,

> 10.    . . . Jason McDaniel was standing facing the two men, with
>           Robert Ekloff at an approximately forty-five degree angle to

his front and left, and Christopher Brown at an approximately forty-five degree angle to his front and right.

11. Jason McDaniel believed that Robert Ekloff and Christopher Brown had stopped fighting. He started turning to walk away.

12. As Jason McDaniel was starting to turn to walk away, Christopher Brown punched him on the right side of his face, causing him to fall to the ground.

13. . . . He was punched from the right, which is the side that Christopher Brown was standing on, and fell to the left, which is the side the Robert Ekloff was on. . . .

16. At the time that Jason McDaniel was struck in the face, there was nobody within fifteen to twenty feet of him except for Christopher Brown and Robert Ekloff.

17. At the time that Jason McDaniel was struck in the face, Christopher Brown was standing on the side that Jason McDaniel was punched from.

Jason McDaniel did not see who hit him. He testified to the stance among himself, Robert Ekloff and Brown immediately preceding his injury, and it is mirrored in the trial court's finding. He described believing he had defused the situation. And he described turning around, walking away, and being struck: "I turned around and started walking off because I thought it was done, and the next thing I know, I'm on the ground with a broken jaw." He reiterated, "I turned around and start walking away." On cross-examination, he was asked, "[A]lmost as soon as you turned around to walk away, you were hit, correct?" He answered, "Yeah, it wasn't very long; no, it wasn't." And again, he was asked, "So just to confirm, Mr. McDaniel, you stated that as you turned to walk away, you were likely hit from the right side, correct, since it was your right?" He answered, "Yes, I assume that's correct." He believed he had been stuck on the right side of his jaw. The next thing he remembered was being helped back to a car. He testified that when he was hit and immediately before, no one was "within punching range" other than Robert Ekloff and Brown. Robert Ekloff also testified he and Brown were facing

3

each other with Jason McDaniel to their side, and only the three of them were in proximity at the time.

Despite this evidence seeming to support the trial court's findings, Brown observes it conflicts with other evidence put on by the State, starting with the balance of Robert Ekloff's testimony. Robert Ekloff testified that after the three formed the stance found by the trial court, "Then [Brown] swung on me, then—then the physical altercation happened." Stating, "It happened very fast," Robert Ekloff continued, "He hit me. I hit him. He hit me again. We went down to the ground—I went down to the ground, and then I got up. Then it was just—it was very chaotic." He continued, "Jason [McDaniel] got hit. He went down to the ground." He, also, did not see Brown hit Jason McDaniel. Robert Ekloff testified he saw Jason McDaniel go down, explaining, "As I was coming up off the ground one time, he would—that's when he went down." The testimony that Robert Ekloff had already been brought to the ground appears inconsistent with Jason McDaniel's testimony he believed he had defused the situation and could safely walk away.

Brown challenges the proposition Jason McDaniel was present when the fight started because there was evidence Robert Ekloff and Brown began fighting before Jason McDaniel was with them. Cheri Ekloff testified she saw Robert Ekloff and Brown start fighting at a time when Jason McDaniel was still inside the bar. Brent Anderson testified he saw Brown strike Robert Ekloff. The prosecutor asked him, "And at that time, were there other people immediately around them? Was there anyone else there?" He answered, "At that point in time there wasn't." He

4

added, "I remember seeing Jason [McDaniel] off in a distance a little ways." The prosecutor asked a short time later, "And I want to come back to where Jason [McDaniel] was . . . at this time. Where did you see Jason McDaniel as you were going over?" He answered, in relevant part, "he was standing there just about how you are right there . . . he was just kind of [a] witness—just like a bunch of the other people." The prosecutor offered a third time, "How about Jason McDaniel? . . . After you saw him standing 10 to 15 feet away, did he come into the altercation?" He answered, not that he had seen. In other words, Brent Anderson stated three times that Robert Ekloff and Brown were engaged without Jason McDaniel being near them. Brown argues Jason McDaniel therefore must have been struck after Brent Anderson's arrival, which in turn must have been in the after-developing melee.

Finally, Brown emphasizes the implications of Jason McDaniel having turned around before receiving the blow from an unseen quarter. Brown points out "if [Jason] McDaniel had turned around (as he testified he had), then Brown would be on his *left* side, and he was struck on the right side." If the only permissible interpretation of the evidence is that Jason McDaniel had turned completely around from his starting position, then, as Brown argues, it would be difficult for Brown, now on his left, to strike the right side of his jaw.

After the initial altercation, there came to be "immense—large amounts of people everywhere." The county sheriff received a call for a "large group of individuals fighting across the street from the Hub Bar in Concrete." The melee ended when blue lights appeared and everybody "just kind of went away." A

5

responding deputy located Brown and observed "a deep cut above his ring finger and his knuckle." He also observed fresh bandage wrappings, suggesting recent application. Brown stated he "punched a guy in the mouth." Brown claimed he acted in self defense and did not identify the "guy" he punched.

When reviewing the sufficiency of the evidence, we ask whether, viewing the evidence and all reasonable inferences from the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); see also Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "A claim of insufficiency admits the truth of the State's evidence and all inferences that can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The Fourteenth Amendment requirement of sufficient evidence " 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " State v. Phuong, 174 Wn. App. 494, 534-35, 299 P.3d 37 (2013) (quoting Jackson, 443 U.S. at 319). In evaluating the sufficiency of the evidence, the court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Andy, 182 Wn.2d 294, 303, 340 P.3d 840 (2014).

Contrary to Brown's argument, the divergences in the testimony do not foreclose a conclusion beyond a reasonable doubt that Brown struck Jason McDaniel. The trial court explained its analysis in its oral ruling this way:

> It's been proven to me that that event, that striking of Mr. McDaniel, was from Mr. Brown, and the reason why I say that is Mr. Brown was on Mr. McDaniel's right side; that was an injury to Mr. Brown's left hand[2]; that if he was turning away from Mr. Brown, he would have been struck—Mr. McDaniel would have been struck on the right side. Even if he would have turned to his—Mr. McDaniel would have turned to his right, that injury could have been inflicted by Mr. Brown as well.
>
> So based upon what I have heard, even though there's differing accounts of the actual whole series of events, I'm convinced, beyond a reasonable doubt, that the evidence shows that Mr. Brown was assaulted—assaulted Mr. McDaniel at that time in Concrete.

Jason McDaniel's testimony permits interpretations other than that he had fully turned his right cheek away from Brown's reach when he was struck. While he initially stated he "turned around and start walking away," he later affirmed he was struck "almost as soon as" he turned around, and Brown's counsel invited his agreement that it was "as you turned to walk away" that he was struck. Jason McDaniel's testimony about the extent of his turning to leave is not so definitive as to prevent the probable inference that he was struck quickly, by the person already on his right, from among the only two people within reach. The trial court's finding that this occurred is supported by evidence the judge was entitled to believe, and the existence of other, contradictory evidence falls within "the responsibility of the trier of fact fairly to resolve conflicts in the testimony." Jackson, 443 U.S. at 319.

---

[2] The trial judge indicated in denying Brown's sufficiency motion after the State rested that the responding deputy testified Brown's injury was to his left hand. The report of proceedings before this court does not show that the deputy identified which of Brown's hands was injured.

Because we conclude the evidence is sufficient under the constitutional standard established in <u>Jackson</u> and <u>Green</u>, we need not reach Brown's concern that some Washington case law may inappropriately relax the constitutional standard.

    Affirmed.

_Birk, J._

WE CONCUR:

_Díaz, J._        _Bowman, J._