# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50203-8-II |
| Respondent, | |
| v. | |
| TIANA LEEANN KEE, | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — A jury found Tiana Leeann Kee guilty of second degree assault. Kee appeals her conviction, arguing that the trial court erred by giving the jury a first aggressor jury instruction. We hold that, although sufficient evidence supported the first aggressor jury instruction, the trial court erred in giving the instruction without also instructing the jury that words alone are not sufficient to make a defendant the first aggressor in an altercation. Therefore, we reverse Kee's conviction and remand for further proceedings consistent with this opinion.

## FACTS

The State charged Kee with the second degree assault of Adam Ostrander based on an incident on August 1, 2016, when she punched him in the face and broke his nose. The case proceeded to a jury trial.

Brandon Lester, Ostrander's younger brother, testified that he and Ostrander were walking down the street and listening to music. An older man, Cody Bemis, asked them to stop the music. Ostrander then briefly got into a verbal altercation with Bemis but he ended it.

As Lester and Ostrander started to walk away from Bemis, Kee approached them and asked Ostrander if he owed Bemis money. Lester testified that Ostrander called Kee a "bitch." I Verbatim Report of Proceedings (VRP) at 61. Kee then said, "[D]o you want me to 'F' you[r] little butt up?" I VRP at 56. Ostrander said, "[D]o it," and the altercation became physical. I VRP at 56. Lester testified that Kee hit Ostrander first. Lester also stated that Ostrander and Kee hit each other back and forth several times and that Kee broke Ostrander's nose with her last hit.

Ostrander testified that when Kee approached him:

> I proceeded to conversate [sic] with her for about thirty seconds and then walk away from her and she made a derogatory comment and I told her to—bitch go home. And that's when she threatened me that if I didn't be [quiet] that she was going to kick my ass.

I VRP at 82-83. Ostrander stated that he told Kee "to go ahead," and she hit him in the face three times. I VRP at 88. Ostrander testified that he starting kicking Kee and that she hit him in the face a fourth time, breaking his nose. Ostrander also stated that he hit Kee in the chin after she had hit him for the fourth time. X-rays later confirmed that Ostrander's nose was broken.

Bemis testified that he was sitting on his porch when Ostrander and Lester walked by playing music very loudly. When Bemis asked them to turn the music down, Ostrander started yelling at him. The verbal altercation escalated into a physical altercation, and after Ostrander made a few failed attempts to hit Bemis, Ostrander left. A few minutes later, Bemis witnessed the altercation between Kee and Ostrander. Bemis testified that Ostrander hit Kee first.

Kee testified that she observed the initial altercation between Bemis and Ostrander, and that Ostrander and Lester were both angry when she approached them. She stated that Ostrander

began to advance toward her with his fists closed. Kee also testified that Ostrander hit her in the face twice before she hit him.

The State proposed a first aggressor jury instruction. Kee objected to the instruction, arguing that the instruction was not supported by the evidence presented at trial. The trial court disagreed and gave the following first aggressor jury instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that [the] defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers (CP) at 77. This instruction is identical to 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 256 (4th ed. 2016) (WPIC 16.04).

The jury found Kee guilty of second degree assault. Kee appeals.

ANALYSIS

Kee argues that the trial court erred in giving a first aggressor jury instruction because the instruction denied her the ability to argue her theory of self-defense. Specifically, Kee argues that there was not sufficient evidence to justify a first aggressor jury instruction because words alone do not constitute sufficient provocation. We hold that, although sufficient evidence supported the first aggressor jury instruction, the trial court nevertheless erred in giving the instruction without also instructing the jury that words alone are not sufficient to make a defendant the first aggressor in an altercation.

I. LEGAL PRINCIPLES

We review de novo whether sufficient evidence justifies a first aggressor jury instruction. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011). In making this determination, we must view the evidence in the light most favorable to the State. *Bea*, 162 Wn. App. at 577. There need only be some evidence that the defendant was the first aggressor to justify giving the instruction. *Bea*, 162 Wn. App. at 577.

Generally, a defendant cannot invoke a self-defense claim when she is the first aggressor and provokes an altercation. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). A first aggressor jury instruction is appropriate when there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense. *Riley*, 137 Wn.2d at 909-10. A first aggressor instruction is also appropriate when "there is conflicting evidence as to whether the defendant's conduct precipitated a fight." *Riley*, 137 Wn.2d at 910. The provoking act must be intentional, but it cannot be the actual, charged assault. *State v. Kidd*, 57 Wn. App. 95, 100, 786 P.2d 847 (1990).

In *Riley*, our Supreme Court held that "the giving of an aggressor instruction where words alone are the asserted provocation" is erroneous. *Riley,* 137 Wn.2d at 911. The court reasoned that a first aggressor jury instruction is based on the principle that a defendant cannot claim self-defense when he or she is the initial aggressor because the victim of the aggressive act is entitled to respond with lawful force. *Riley*, 137 Wn.2d at 912. A victim cannot, however, lawfully respond with force to a defendant's use of words alone. *Riley*, 137 Wn.2d at 912.

## II. SUFFICIENCY OF EVIDENCE FOR FIRST AGGRESSOR INSTRUCTION

Here, there are conflicting accounts of whether Kee's or Ostrander's actions first provoked the second degree assault. Ostrander and Lester both testified that, after their verbal quarrel, Kee hit Ostrander first. On the other hand, Bemis and Kee testified that Ostrander hit Kee first. Regardless of who threw the first punch, both Kee and Ostrander hit each other before Kee finally hit Ostrander and broke his nose.

Viewed in the light most favorable to the State, the evidence supports the State's position that Kee was the first aggressor when she hit Ostrander. And there is no dispute that the State charged Kee only for the last punch that broke Ostrander's nose. Therefore, that first punch was not the charged assault.

Because there is conflicting evidence regarding whether Kee was the first aggressor and provoked the need to act in self-defense, sufficient evidence supported giving the first aggressor jury instruction.

## III. LANGUAGE OF FIRST AGGRESSOR INSTRUCTION

Kee argues that the trial court erred in giving the jury the first aggressor jury instruction because the language of the instruction was not complete and it permitted the jury to find that she provoked the altercation based on mere words. We agree.

Jury instructions are sufficient when they are supported by substantial evidence, permit the parties to argue their theories of the case, and properly inform the jury of the applicable law. *State v. Woods*, 138 Wn. App. 191, 196, 156 P.3d 309 (2007). Self-defense instructions are subject to heightened scrutiny and "'must make the relevant legal standard manifestly apparent to the average

juror.'" *Woods*, 138 Wn. App. at 196 (quoting *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).

As discussed above, there is evidence regarding Kee's and Ostrander's physical altercation. However, their interaction started with a verbal altercation. Lester testified that Kee said, "[D]o you want me to 'F' you[r] little butt up?" before the fight ensued. I VRP at 56. Ostrander also testified that Kee "made a derogatory comment" before she hit him. I VRP at 82-83. Therefore, the evidence supported a finding that Kee's *words*, rather than her physical acts, first provoked the physical altercation.

The court in *Riley* clearly held that words alone cannot be the provoking conduct that justifies a first aggressor instruction. *Riley*, 137 Wn.2d at 911-12. However, the jury instruction given here did not convey this rule of law. The trial court's first aggressor instruction stated that "if you find beyond a reasonable doubt that the defendant was the aggressor, and that [the] defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense." CP at 77. The trial court did not instruct the jury that words are not adequate provocation to negate self-defense.

From the evidence presented at trial, a reasonable juror could have concluded that Kee's comments to Ostrander provoked the assault. Additionally, the trial court's instruction allowed the State to argue to the jury that it should focus on Kee's initiating an argument with her words rather than focusing on her punches.

In fact, the State made such an argument. At the very beginning of its closing argument, the State emphasized that "[t]he Defendant walked up to this situation – the situation that didn't

involve her in any way. She initiated this entire incident. *She was the first person to speak to Adam Ostrander*." II VRP at 209 (emphasis added). In conclusion, the State argued,

> There was no reason for her to walk up there – there was no reasons [sic] for her to become a part of it. And as the court mentioned one of the instructions says if she and – is the aggressor in this situation she can't claim self-defense. . . . And she created this situation – *she created this argument* – she created this conflict and it ended in a broken nose.

II VRP at 220 (emphasis added). In rebuttal, the State argued, "I would argue walking up to someone and saying do you owe him money with a raised tone and saying to someone I should kick your ass is pretty darn aggressive." II VRP at 243.

By failing to instruct the jury that words alone are insufficient provocation for purposes of the first aggressor jury instruction, the trial court did not ensure that the relevant self-defense legal standards were manifestly apparent to the average juror. Moreover, the trial court's instructions affected Kee's ability to argue that she acted in self-defense.

We recognize that WPIC 16.01 does not include an express statement that words alone cannot constitute aggression that negates self-defense. The pattern instruction's reference to an "intentional *act*" and the "defendant's *acts*," could be viewed as requiring some physical conduct. WPIC 16.01 (emphasis added); CP at 77. But verbally abusing someone also constitutes an "act." When there is evidence that the defendant provoked an altercation with words, particularly when the State suggests that those words constitute first aggression, the language of WPIC 16.01 is inadequate to convey the law established in *Riley*.

Accordingly, we hold that the trial court erred in giving the first aggressor jury instruction without also instructing the jury that words alone are not adequate provocation to make a defendant the first aggressor in an altercation.

7

CONCLUSION

We hold that although sufficient evidence supported the first aggressor jury instruction, the trial court erred in giving the instruction without also instructing the jury that words alone are not sufficient to make a defendant the first aggressor in an altercation. Accordingly, we reverse Kee's conviction and remand for further proceedings consistent with this opinion.

SUTTON, J.

We concur:

MAXA, C.J.

JOHANSON, J.