# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51432-0-II |
| Respondent, | |
| v. | |
| KENSHON DEVONTE STOKES, | UNPUBLSIHED OPINION |
| Appellant. | |

MELNICK, J. — A jury found Kenshon Stokes guilty of assault in the fourth degree. He argues that the trial court erred by giving a first aggressor instruction because the evidence did not support it and because the instruction allowed the jury to find that he was the first aggressor based on words alone. He also contends that the State committed prosecutorial misconduct in its closing argument. Lastly, he argues that the trial court imposed unauthorized legal financial obligations (LFOs). We affirm the conviction but remand for the court to review the imposition of LFOs.

FACTS

Kalia Brown and Stokes, a married couple, lived together. One evening, Brown reported that Stokes grabbed her and later pointed a shotgun at her. The State charged Stokes with assault in the fourth degree based on him grabbing Brown and assault in the second degree related to Stokes pointing the shotgun at Brown.[1]

---

[1] The jury found Stokes not guilty of the assault charge related to the shotgun incident. Therefore, much of the evidence at trial related to that incident is not mentioned further.

At trial, Brown testified that the incident arose after Stokes confronted her about alleged infidelity and she did not respond to his questions. When she did not respond, Stokes became increasingly upset, and at one point, got "in [her] face." Report of Proceedings (RP) (Jan. 9, 2018) at 118. Brown then went into a different room.

With permission, Stokes then took Brown's cell phone off the dining room table and began looking through it. She then told Stokes to stop. Brown asked Stokes for her phone, but he refused to give it to her. Brown then tried to grab the phone out of Stokes's hand, and Stokes grabbed her shirt by the collar "to really get the answers out of [her]." RP (Jan. 9, 2018) at 120. Brown put her hands up and told Stokes to back off. Stokes let her go and went into a bedroom.

Stokes disputed a portion of Brown's version of events. Stokes admitted that he refused to return Brown's phone but said he grabbed Brown to hold her away because she attacked him while he held her cell phone. Stokes testified that on the night of the incident, Brown arrived home and he took her phone. He said: "When I grabbed [the phone], she told me to give it back to her, but then she told me also to go ahead and go through it." RP (Jan. 10, 2018) at 225.

He said that, at first, Brown did not try to stop him but eventually she tried to get the phone back. He described the incident:

> So when [Brown] was trying to get the phone back from me, she was grabbing on my shirt and like scratching on my arm where the phone was, and so I had the phone up here and I kind of just extended my arm right here. That way she could stop grabbing onto me and scratching on my arm.

RP (Jan. 10, 2018) at 226. Stokes admitted that he held off Brown but denied grabbing Brown's shirt. After Brown tried but failed to get the phone, she left the room.

At the conclusion of the evidence, Stokes proposed a self-defense instruction, which the court gave.

2

The State then proposed a first aggressor instruction. Stokes objected. The State argued that the instruction should be given because the evidence showed that Stokes kept Brown's property away from her and refused to give it back and that this act provoked Brown to assault Stokes to get her phone back.

The court gave the first aggressor instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use force upon another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers (CP) at 98.

In its closing argument, the State argued that Stokes should not prevail on self-defense because he was the first aggressor. The prosecutor discussed the first aggressor instruction:

> It indicates that no person can basically provoke a response where somebody is naturally going to create a physical altercation between the two of them. So the prototypical example of this is if you get up into somebody's face in a bar and start cussing them out, when a fight ensues, you don't get to say self-defense when you punched them because you provoked that fight with your language and your demeanor.
>
> This case is an even better example. You don't get to take somebody's cell phone, refuse to give it back, and then claim self-defense when a fight ensues. [Brown] has a right to that phone and a right to get it back. You don't get to do that.

RP (Jan. 10, 2018) at 270-71.

The jury found Stokes guilty of assault in the fourth degree. Stokes appeals.

3

ANALYSIS

I.    FIRST AGGRESSOR JURY INSTRUCTION

Stokes argues that the trial court improperly gave the first aggressor jury instruction because the evidence did not support it.  He contends that Brown could not lawfully use force to recover her phone so he could not be the first aggressor.[2]  We disagree.

A.    Legal Principles

Due process requires that the State prove every element of the charged offense beyond a reasonable doubt.  *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017).  Once raised by a defendant in an assault case, the State has the burden of proving the absence of self-defense beyond a reasonable doubt.  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).  A first aggressor instruction informs the jury that if it determined Stokes was the first aggressor, then his self-defense claim is unavailable, and the jury does not have to consider whether the State has proved beyond a reasonable doubt that the defendant did not act in self-defense.  *State v. Bea*, 162 Wn. App. 570, 575-76, 254 P.3d 948 (2011).

We review first aggressor instructions, utilizing the same standards we use to review other jury instructions.  *State v. Grott*, ___Wn.2d___, 458 P.3d 750, 757 (2020).  We review de novo

---

[2] Additionally, Stokes argues that the instruction "was constitutionally infirm" because it allowed the jury to find that Stokes was the first aggressor based on words alone.  Br. of Appellant at 13. We do not decide the constitutional issue.  Stokes has not cited with particularity which constitutional provisions he alleges have been violated nor does he make argument on the constitutional issue.  He merely alleges the instruction "was constitutionally infirm."  We do not review issues for which inadequate argument or passing treatment has been made.  *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004).  In addition, Stokes relies on *State v. Riley*, 137 Wn.2d 904, 976 P.2d 624 (1999); however, *Riley* rested on grounds completely aside from any constitutional issue.  *See* 137 Wn.2d at 911.

whether sufficient evidence supported giving the first aggressor instruction. *Bea*, 162 Wn. App. 577.

> "[W]hen determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction." While we have cautioned that "courts should use care in giving an aggressor instruction," we have also recognized that "an aggressor instruction should be given where called for by the evidence."

*Grott*, 458 P.3d at 757 (alteration in original) (citation omitted) (quoting *State v. Wingate*, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005), and *State v Riley*, 137 Wn.2d 904, 910 n.2, 976 P.2d 624 (1999)).

In *Grott*, the court clarified that "an act of first aggression is an 'intentional act reasonably likely to provoke a belligerent response' *by* the victim, while lawful self-defense requires a 'subjective, reasonable belief of imminent harm *from* the victim.'" 458 P.3d at 758 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 256 (4th ed. 2016), and *State v. LeFarber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009)).

"[T]he reason one generally cannot claim self-defense when one is an aggressor is because 'the aggressor's victim, defending [her]self against the aggressor, is using lawful, not unlawful, force; and the force defended against must be unlawful force, for self-defense.'" *Riley*, 137 Wn.2d at 911 (quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.7, at 657-58 (1986)). "[T]he [first] aggressor doctrine is based upon the principle that the aggressor cannot claim self-defense because the victim of the aggressive act is entitled to respond with lawful force." *Riley*, 137 Wn.2d at 912.

Where words alone constitute the asserted provocation, it is error to give a first aggressor instruction. *Riley*, 137 Wn.2d at 910-11.

B.      The Evidence Supported the Instruction

Stokes argues that the evidence did not support giving the instruction because Brown, in attempting to retrieve her phone, did not use lawful force.  We disagree.  Stokes's argument for the giving of the first aggressor instruction is predicated on an assumption that he used lawful force in preventing Brown from using unlawful force to regain possession of her phone.[3]  However, Stokes is neither viewing the evidence in the light most favorable to the State nor looking at the evidence in light of the court's instruction.

The court instructed the jury as follows:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use force upon another person.  Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 98.

The State argued that that "[y]ou don't get to take somebody's cell phone, refuse to give it back, and then claim self-defense when a fight ensues.  [Brown] has a right to that phone and a right to get it back.  You don't get to do that."  RP (Jan. 10, 2018) at 270-71.

In making this argument, the State argued what the courts have agreed upon.  Cell phones contain vast amounts of intimate and personal details.  *Riley v. California*, 573 U.S. 373, 395-97, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014).  Cell phones "are in fact minicomputers that also happen to have the capacity to be used as a telephone.  They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers."  *Riley*, 573 U.S. at 393.

---

[3] We need not decide the issue of whether Brown could lawfully use force to regain possession of her phone.  It is irrelevant to the analysis and resolution of this issue.

Contrary to Stokes's argument, the State did not solely rely on words to support the giving of the first aggressor instruction. The present case is similar to *State v. Hawkins*, 89 Wash. 449, 450, 154 P. 827 (1916), where the defendant dashed through a barn door, ran up to a group of men, and demanded to know what was wrong with them. He accused the victim of cutting his hog and then lying about it. *Hawkins*, 89 Wash. at 450. Although the defendant did not strike the first physical blow, "he manifestly was the aggressor in the sense that his actions brought on the affray." *Hawkins*, 89 Wash. at 455.

This situation is dissimilar from *State v. Kee*, 6 Wn. App. 2d 874, 876, 431 P.3d 1080 (2018), where the State charged the defendant with assault in the second degree after she punched a man in the face and broke his nose. The evidence at trial showed that the defendant walked up to the man, and a verbal argument ensued. *Kee*, 6 Wn. App. 2d at 876-77. The argument then became physical. *Kee*, 6 Wn. App. 2d at 877. Conflicting evidence existed as to who threw the first punch. *Kee*, 6 Wn. App. 2d at 879.

In reversing the conviction because the trial court erred in giving a first aggressor instruction, we noted that the "the evidence supported a finding that [the defendant's] words, rather than her physical acts, first provoked the physical altercation." *Kee*, 6 Wn. App. 2d at 880 (emphasis omitted). We also pointed out that the prosecutor's closing argument improperly encouraged the jury to find that the provoking act was the defendant's words alone. *Kee*, 6 Wn. App. 2d at 881.

In the present case, no reasonable juror could have found that Stokes's words alone provoked Brown's response. Instead, Brown's response resulted from Stokes refusing to give her the phone. Thus, Stokes's words, when he refused to give Brown her phone upon her request, were accompanied by another intentional act, holding onto her phone.

When reviewing the evidence in the light most favorable to the State, Stokes's act of retaining Brown's phone when he no longer had permission to do so constituted an intentional act reasonably likely to provoke a belligerent response, which created his need to act in self-defense and use force against Brown. Because the evidence supported it, the court did not err by giving the first aggressor instruction.

II.    PROSECUTORIAL MISCONDUCT

Stokes argues that the prosecutor committed misconduct by misstating the law both when he argued that verbal aggression is enough to be a first aggressor and when he argued that you can use force to retrieve property. As to the former, Stokes waived this issue. As to the latter, the prosecutor properly argued the issue.

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *Glasmann*, 175 Wn.2d at 704. A prosecutor "commits misconduct by misstating the law." *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015).

We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

In a prosecutorial misconduct claim, a defendant who fails to object to improper conduct may be deemed to have waived the issue on appeal unless the prosecutor's statements are so flagrant and ill-intentioned that the resulting prejudice could not be corrected by a jury instruction. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *Emery*, 174 Wn.2d at 762.

Stokes claims that the prosecutor misstated the law twice during closing argument. First, during closing argument, the prosecutor gave an example of a first aggressor.

> So the prototypical example of this is if you get up into somebody's face in a bar and start cussing them out, when a fight ensues, you don't get to say self-defense when you punched them because you provoked that fight with your language and your demeanor.

RP (Jan. 10, 2018) at 270. Although this example is similar to what *Kee* prohibited, Stokes failed to object. Little if any prejudice resulted, and a curative instruction could have cured any defect. Therefore, this argument is waived.

Second, the prosecutor stated:

> You don't get to take somebody's cell phone, refuse to give it back, and then claim self-defense when a fight ensues. [Brown] has a right to that phone and a right to get it back. You don't get to do that.

RP (Jan. 10, 2018) at 270-71. As explained above, the evidence supported the instruction from which the prosecutor made this argument. Therefore, the prosecutor did not err in making this argument.

We conclude that Stokes's prosecutorial misconduct claim fails.

III.    LFOs

Stokes argues, and the State agrees, that because of the 2018 amendments to the LFO statutes we should strike the criminal filing fee and interest accrual provision that the trial court imposed on him.

We agree and remand for the trial court to reconsider the imposition of LFOs.  On remand, the trial court should consider all of the LFOs in light of the 2018 amendments to the LFO provisions, Laws of 2018, ch. 269, and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

We affirm the conviction but remand for the trial court to reconsider the LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Lee, C.J.