# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53133-0-II |
| Respondent, | |
| v. | |
| ANJELA HASSERIES, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — During an altercation with her husband, Anjela Hasseries stabbed him in the arm twice with a 26-inch-long Lord of the Rings replica sword.  Hasseries appeals her conviction and sentence for one count of second degree assault—domestic violence, with deadly weapon enhancements.  She argues that the State provided insufficient evidence that she intentionally assaulted her husband and insufficient evidence that she did not act in self-defense.  She also argues that she received ineffective assistance of counsel because her trial counsel did not object to language in the first aggressor instruction permitting the jury to base a first aggressor finding on her words alone.  Finally, Hasseries argues that the trial court erred by imposing community custody conditions that were not crime-related.  We disagree and affirm her conviction and sentence.

FACTS

Following an altercation between Hasseries and her husband, Patrick[1], the State charged Hasseries with one count of second degree assault with domestic violence and deadly weapon special allegations.

At trial, Hasseries and Patrick testified to different versions of the incident. Patrick recalled learning that Hasseries was having an affair with a close friend in July 2018. She briefly moved out of their home and in with her boyfriend. About a week later, Patrick convinced Hasseries to move back into their home to try and salvage their marriage. A few days after moving back into their home, Hasseries was smoking marijuana and watching videos on her phone on their back porch. Patrick convinced Hasseries to come inside so they could watch videos together.

According to Patrick, when he learned that Hasseries was still seeing her boyfriend, the two began arguing. Hasseries told Patrick she would not stop seeing her boyfriend, but would remain living in her and Patrick's house because her name was on the deed. Hasseries then went to the second floor of their home to retrieve the deed to the house, but Patrick told her he had hidden the safety deposit box from her. Hasseries screamed with rage and threw a box of objects across the room, not in Patrick's direction. Hasseries continued to rage, throwing laundry buckets against the wall.

---

[1] Because Anjela Hasseries and Patrick Hasseries share a last name, we refer to Patrick by his first name. We intend no disrespect.

Hasseries then began slapping, punching, and attempting to kick Patrick. Patrick did not attack Hasseries at any point. When Hasseries tried to kick Patrick, he caught her foot with his left hand and pushed her forward away from him with his right hand. Hasseries bounced off the bed and landed on her back on the floor. Hasseries resumed attacking Patrick, and Patrick once again caught her foot and pushed her away from him and onto the ground. After Patrick pushed her a second time, Hasseries ran down the stairs.

Patrick remained upstairs for about 30 seconds, believing that Hasseries had left the home. Patrick went down the stairs and walked to look out a window. While he was standing at the window, Hasseries approached him from behind with a Lord of the Rings replica sword in her hands. Hasseries stood in an "attack-ready stance" with both hands on the hilt. Verbatim Report of Proceedings (VRP) (Feb. 27, 2019) at 172. Hasseries continued to move closer to Patrick, in an offensive stance,[2] until he was cornered. Patrick moved into a defensive stance.

Hasseries moved closer to Patrick, and the blade of the sword entered his right arm. Patrick grabbed the sword with his left hand to try and disarm Hasseries. During the struggle, Patrick incurred some minor cuts on his palms and sustained another slice in his arm. At some point, the sword left Hasseries's hands, and Patrick began focusing on his wounds. Patrick called 911 and attempted to put pressure on his wounds, which were bleeding profusely. While Patrick was on the phone, Hasseries attempted to mop the blood off the floor in the kitchen.

---

[2] Patrick testified that both he and Hasseries had taken fencing lessons where they learned that in an offensive stance, a person turns their body sideways to minimize their body profile and keeps their legs at an angle to easily retreat or lunge in.

Patrick was ultimately flown in a helicopter to Harborview Medical Center for surgery on his arm.

Hasseries's testimony about the incident was consistent with Patrick's up until their argument about whether she would stop seeing her boyfriend. She recalled Patrick telling her to get out of the house and her insisting she would not because she owned their home too. According to Hasseries, while she was squatting down and looking for the safety deposit box containing the deed to the house, Patrick put his hand on Hasseries's head and threw her to the ground. Hasseries believed she suffered a concussion as a result. She recalled lying on the ground with her head spinning as Patrick screamed at her to get out of his room. Hasseries got up and continued to look for the safety deposit box when Patrick started hitting and kicking her and threw her to the ground a second time.

Hasseries quickly moved down the stairs. She heard Patrick running down the stairs behind her. Patrick had a "god awful look on his face" and was "bee lining" towards Hasseries. VRP (Feb. 28, 2019) at 279. Hasseries feared that Patrick would hurt her again, so she grabbed the closest thing to her to create some space between the two of them—the 26-inch-long Lord of the Rings replica sword. Within seconds, Patrick was grabbing the end of the sword and trying to rip it from her hands. The two engaged in a tug-of-war over the sword, eventually winding up in the kitchen. Suddenly, Patrick said "ow" and released the sword. VRP (Feb. 28, 2019) at 281. Patrick went into the bathroom, and Hasseries put the sword back on the mantle.

4

While Patrick was on the phone with 911, Hasseries began cleaning up the blood in the kitchen so their son would not see it when he woke up. Hasseries went to her bedroom to change out of her pajamas. Law enforcement arrived at the house and arrested her.

The trial court instructed the jury on self-defense. The trial court also issued a pattern "first aggressor" instruction to the jury:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers (CP) at 60; *See* 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 173-74 (2016). Hasseries's trial counsel stated he did not believe he had any authority to object to the first aggressor instruction and believed the instruction to be appropriate. In closing argument, the State focused on Hasseries's and Patrick's credibility. As to the first aggressor instruction, the State argued that under either Hasseries's or Patrick's version of events, Hasseries's actions provoked an alleged need for self-defense. The jury found Hasseries guilty of second degree assault with domestic violence and deadly weapon special verdicts.

Patrick filed a victim impact statement with the trial court for sentencing. In his statement, Patrick expressed concerns about Hasseries's mental health and substance abuse. He recalled Hasseries's struggles with bipolar disorder, suicidal ideation, and self-harm. At sentencing, the trial court remarked:

> The fact pattern was an unusual one. And in some ways tending towards a little bit on the bizarre in the sense that the reaction that Ms. Hasseries had to the situation was grossly disproportionate to what was occurring at the time . . . .

5

> For that reason, I have some concerns about mental health as well as whether or not there was some drug issues. I know that there was some use of marijuana that maybe preceded—
>
> —this incident. And I'm not sure how much that might have played a part into what happened. I think there was also some reference in the victim impact statement to some drug use, I believe. And I'm not sure what is going on. There's also references to mental health issues in the victim impact statement that is somewhat consistent with the fact pattern that the court observed.

VRP (March 22, 2019) at 11. The trial court stated "I think the larger issue in this case is somewhere in line with mental health issues and/or drug issues." VRP (March 22, 2019) at 12. The trial court imposed drug and alcohol related community custody conditions as part of Hasseries's sentence and ordered Hasseries to complete substance use disorder and mental health evaluations.

Hasseries appeals her judgment and sentence.

## ANALYSIS

### I. INSUFFICIENT EVIDENCE

Hasseries argues that the State failed to prove beyond a reasonable doubt that she committed second degree assault because there was insufficient evidence to prove intent and there was insufficient evidence to prove the absence of self-defense. We disagree.

Due process requires that the State prove every element of the charged offense beyond a reasonable doubt. *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). In order to convict Hasseries of second degree assault, the State had to prove beyond a reasonable doubt that she intentionally assaulted Patrick thereby recklessly inflicting substantial bodily harm. RCW 9A.36.021(1)(a). The State also had the burden of proving the absence of self-defense beyond a reasonable doubt. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

6

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Such inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "We defer to the jury 'on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.'" *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014) (quoting *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004)). We may infer specific criminal intent from conduct that plainly indicates such intent as a matter of logical probability. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). Circumstantial evidence is not any less reliable or probative than direct evidence in reviewing the sufficiency of the evidence supporting a jury verdict. *Kintz*, 169 Wn.2d at 551.

A.      *Intent*

Hasseries argues that the State failed to present sufficient evidence that she intentionally assaulted Patrick. We disagree.

Hasseries argues that the evidence only showed accidental contact during a struggle over the sword after she armed herself in self-defense. But the jury rejected her version of events, and we defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Andy*, 182 Wn.2d at 303. And on a claim of insufficient

7

evidence, the defendant admits the truth of the State's evidence and all reasonable inferences therefrom. *Homan*, 181 Wn.2d at 106.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, the evidence showed that Hasseries intentionally assaulted Patrick. Patrick testified that after Hasseries repeatedly hit and kicked him upstairs, Hasseries armed herself with a 26-inch sword. Hasseries cornered Patrick with the sword in an "attack-ready stance." VRP (February 27, 2019) at 172. She then sliced Patrick's arm with the sword before he attempted to disarm her. This evidence indicates criminal intent as a matter of logical probability. *Goodman*, 150 Wn.2d at 781. Based on this evidence, a rational trier of fact could have found that Hasseries intentionally assaulted Patrick beyond a reasonable doubt.

B.      *Self-Defense*

Hasseries also argues that the State failed to present sufficient evidence to establish the absence of self-defense. We disagree.

The State had the burden of proving the absence of self-defense beyond a reasonable doubt. *Kyllo*, 166 Wn.2d at 862. The jury evaluates evidence of self-defense from the standpoint of the reasonably prudent person, knowing all that the defendant knows and seeing all that the defendant sees. *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). The degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997).

Hasseries relies on her trial testimony to support her argument. But the jury was not required to believe her testimony. The State's evidence, which we take as true on a sufficiency challenge, shows that the argument turned physical when Hasseries began hitting and kicking Patrick upstairs, and that she then escalated by arming herself with a sword and cornering him before cutting his arm. There is no evidence that Patrick threatened Hasseries or pursued her with a weapon such that it would justify Hasseries's need to stab Patrick with the sword. We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Andy*, 182 Wn.2d at 303. Based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that Hasseries did not act in self-defense when she assaulted Patrick.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Hasseries argues that she received ineffective assistance of counsel when counsel failed to object to the first aggressor instruction. Specifically, Hasseries argues that the first aggressor instruction given to the jury contained language that permitted the jury to determine that she was the first aggressor based on her words alone. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove that she received ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513,

524, 423 P.3d 842 (2018). "Because both prongs must be met, a failure to show either prong will end our inquiry." *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We strongly presume that defense counsel's conduct was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). To establish prejudice, the defendant must show a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Estes*, 188 Wn.2d at 458.

Generally, a defendant cannot claim self-defense when she was the aggressor provoking an altercation. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). The first provoking act must be an act that a "'jury could reasonably assume would provoke a belligerent response by the victim.'" *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011) (internal quotation marks omitted) (quoting *State v. Wasson*, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989)). A first aggressor jury instruction is based on the principle that a defendant cannot claim self-defense when she is the initial aggressor because the victim of the aggressive act is entitled to respond with lawful force. *Riley*, 137 Wn.2d at 912. But a victim cannot lawfully respond with force to a defendant's use of words alone. *State v. Kee*, 6 Wn. App. 2d 874, 880-81, 431 P.3d 1080 (2018).

"Jury instructions are sufficient when they are supported by substantial evidence, permit the parties to argue their theories of the case, and properly inform the jury of the applicable law. Self-defense instructions are subject to heightened scrutiny and 'must make the relevant legal

standard manifestly apparent to the average juror.'" *Kee*, 6 Wn. App. 2d at 880 (internal quotation marks omitted) (quoting *State v. Woods*, 138 Wn. App. 191, 196, 156 P.3d 309 (2007)). In *Kee*, this court held that the trial court erred in giving a first aggressor jury instruction that permitted the jury to find that the defendant provoked the altercation based on mere words where a reasonable juror could have concluded, based on the evidence, that the defendant's comments to the victim provoked the assault. 6 Wn. App. 2d at 880-82.

Hasseries cannot show that her trial counsel's failure to object to the language of the first aggressor instruction prejudiced her. This is not a case where, from the evidence presented at trial, a reasonable juror could have concluded that Hasseries's words alone provoked the altercation. Nor did the State rely on Hasseries's words to support a first aggressor theory. In its closing argument, the State emphasized that the first aggressor doctrine is focused on actions. The State acknowledged, "If you believe her story, then she wasn't the aggressor [upstairs]." VRP (Feb.28, 2019) at 379. The State argued that, even under Hasseries's version of events, once Hasseries came downstairs, she was the first aggressor based not on her words, but on her action of arming herself with the sword.

> Regardless of which of those stories you believe, the moment she came downstairs and she said she was no longer afraid of him and she walked through that living room, the first thing that happened was she grabbed the sword.
>     He didn't strike her. He didn't threaten to strike her. He didn't raise his fist. And so the very first force that was used downstairs was started with her grabbing the sword off the mantle and lunging forward at him.

VRP (Feb. 28, 2019) at 379-80.

Under either Hasseries's or Patrick's version of events, a reasonable juror could not have concluded that Hasseries's words alone provoked the need for self-defense. Hasseries cannot

11

show that had her trial counsel objected to the first aggressor instruction's lack of clarification that the provoking act cannot be words alone that the outcome of the trial would have been different. *See Estes*, 188 Wn.2d at 458. Accordingly, her argument that she received ineffective assistance of counsel fails.

### III. COMMUNITY CUSTODY CONDITIONS

Finally, Hasseries argues that the trial court erred by imposing community custody conditions that are not crime-related. Specifically, Hasseries challenges the trial court's requirement that she undergo mental health and substance use evaluations and the trial court's imposition of alcohol and drug related conditions. We hold that the trial court did not abuse its discretion by ordering Hasseries to undergo mental health and substance use evaluations or by imposing alcohol and drug related community custody conditions.

Under the terms of community custody, a sentencing court has discretionary authority to impose crime-related prohibitions and order participation in crime-related treatment or counseling services. RCW 9.94A.703(3)(c), (f); *State v. Land*, 172 Wn. App. 593, 605, 295 P.3d 782 (2013). A "crime-related prohibition" is one that involves "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We review the trial court's decision to impose such conditions for an abuse of discretion. *State v. Armendariz¸*160 Wn.2d 106, 110, 156 P.3d 201 (2007). An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). Crime-related prohibitions disallow conduct that directly or reasonably relates to the circumstances of the offense. *Nguyen*,

191 Wn.2d at 683-84. "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *Nguyen*, 191 Wn.2d at 684 (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)).

The evidence shows that Hasseries used marijuana before the altercation with Patrick ensued. The trial court also considered Patrick's victim impact statement that alleged that Hasseries's use of mind-altering substances had increased in the time leading up to the assault. The trial court found that drug issues could be the "larger issue" underlying the case. VRP (March 22, 2019) at 12. Because there is some basis for the connection between Hasseries's substance use and her crime, we hold that the trial court did not abuse its discretion by imposing drug related conditions or by ordering a substance use evaluation.

Additionally, the trial court did not abuse its discretion by ordering a mental health evaluation. Patrick's victim impact statement outlined Hasseries's significant history with mental illness, which the trial court found consistent with the fact pattern of the case. The trial court found that Hasseries's reaction to the situation was grossly disproportionate to what occurred during the assault and expressed concern that mental health issues could have been a contributing factor to the crime. Accordingly, ordering a mental health evaluation was reasonably related to the circumstances of the assault, and the trial court did not abuse its discretion.

A trial court also has authority to prohibit alcohol possession or consumption as a community custody condition, regardless of the underlying offense's nature. RCW

No. 53133-0-II

9.94A.703(3)(e). Accordingly, the trial court did not abuse its discretion by prohibiting Hasseries from possessing or consuming alcohol.

CONCLUSION

In conclusion, we hold that the State presented sufficient evidence that a reasonable juror could have found beyond a reasonable doubt that Hasseries intentionally assaulted Patrick and did not act in self-defense. We further hold that Hasseries failed to show that she received ineffective assistance of counsel. Finally, we hold that the trial court did not abuse its discretion by imposing drug and alcohol related community custody conditions or by requiring Hasseries to undergo mental health and substance use evaluations.

We affirm Hasseries's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

Melnick, J.

Cruser, J.

14