# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56331-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSEPH NELSON BOUSQUET, | |
| Appellant. | |

MAXA, J. – Joseph Bousquet appeals his fourth degree assault – domestic violence conviction. The conviction arose out of an altercation between Bousquet and his former girlfriend, Pamela Biery.

We hold that (1) the trial court did not err in giving the first aggressor jury instruction because it was supported by the evidence; and (2) even if the prosecutor's statement during closing argument was improper, Bousquet failed to object and he cannot show that the error was incurable. Accordingly, we affirm Bousquet's conviction.

## FACTS

Bousquet and Biery were in a relationship. On March 31, 2021, Bousquet was at Biery's home when she got home from work. The two got into an argument regarding who was going to take Bousquet home. Eventually there was a physical altercation between them.

Biery's daughter called the police. The State charged Bousquet with second degree assault – domestic violence.

At trial, Biery testified that Bousquet began yelling at her and demanding that she take him home. Biery stated that Bousquet then threw a bag that he had packed at her, hitting her in the side. She testified that Bousquet got more and more upset and started "kind of tussling me, grabbing me, tossing me." 1 Report of Proceedings (RP) at 376-77. Biery was pushing back to get him away from him. Then Bousquet pushed her down on the bed a few times, pushed her onto the floor, and attempted to choke her.

Bousquet testified that on March 31 he expected that Biery would take him home when she got home from work. He said that he wanted to go home because the two had been arguing about various issues for the last few days. Biery refused to take him home. Bousquet stated that the two started pushing and shoving each other around. He claimed that Biery made the first contact by pushing him and saying, "Get out of my face." 2 RP at 458.

Bousquet acknowledged that he was packing his belongings in a bag and then threw the bag on the bed, accidently striking Biery. He stated that at one point Biery grabbed him by the throat. He pushed her off him and then ran off. During cross examination, Bousquet clarified that he did not believe that Biery actually pushed him first; rather the two started pushing each other at the same time.

The trial court accepted Bousquet's request to instruct the jury on self-defense. The State proposed a first aggressor jury instruction. Bousquet objected. The court ultimately decided to give the jury instruction. The court instructed the jury:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense. Words alone are not adequate provocation for the defendant to be the aggressor.

2

Clerk's Papers at 131. The instruction was based on WPIC 16.04. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS CRIMINAL: 16.04, at 256 (4th ed. 2016).

During closing argument, the prosecutor explained that it was the State's burden to show that Bousquet assaulted Biery to establish fourth degree assault. The prosecutor then stated that assault is the intentional touching of another person with unlawful force that is harmful or offensive. The prosecutor stated that there were several acts that qualify as fourth degree assault, such as the pushing and shoving and Bousquet throwing the bag at Biery on the bed.[1]

The prosecutor concluded his closing argument with, "*You need to decide what happened. That's your job*. [Biery] and [Bousquet's] stories are similar to a point. They both agree there was an argument. They both agree there was some tussling between them. They just don't agree who is at fault." 2 RP at 539 (emphasis added). There was no objection.

The jury found Bousquet not guilty of second degree assault, but guilty of the lesser included offense of fourth degree assault – domestic violence. Bousquet appeals his conviction.

ANALYSIS

A.      FIRST AGGRESSOR JURY INSTRUCTION

Bousquet argues that the trial court erred in giving the first aggressor jury instruction because there was not sufficient evidence to support the instruction. We disagree.

A defendant's use of force is lawful and self-defense can be asserted as a defense if the defendant subjectively and reasonably believes that the victim will inflict imminent harm. *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020). However, self-defense cannot be invoked if

---

[1] The trial court had instructed the jury that it must be unanimous as to which act constituted fourth degree assault.

the defendant was the first aggressor. *Id.* Therefore, a first aggressor jury instruction should be given if the evidence supports the instruction. *Id.*

There is sufficient evidence to support a first aggressor instruction where the jury could determine through credible evidence that the defendant provoked the need to act in self-defense. *Id.* at 273. The instruction is appropriate where there is conflicting evidence as to whether the defendant's conduct precipitated a fight. *State v. Riley*, 137 Wn.2d 904, 910, 976 P.2d 624 (1999). Although the provoking act generally cannot be the assault with which the defendant is charged, this rule does not apply "where the defendant engaged in a course of aggressive conduct, rather than a single aggressive act." *Grott*, 195 Wn.2d at 271.

We review de novo a trial court's decision to give a first aggressor jury instruction. *State v. Kee*, 6 Wn. App. 2d 874, 878, 431 P.3d 1080 (2018). In making this determination, we view the evidence in the light most favorable to the party who proposed the instruction. *Grott*, 195 Wn.2d at 270.

Here, Biery testified that the physical part of the altercation started when Bousquet threw his bag at her and hit her. He then started grabbing and tossing her. Only then did Biery push him back. Viewed in the light most favorable to the State, this evidence is sufficient for the jury to reasonably determine that Bousquet provoked the need to act in self-defense.

Bousquet argues that because the State did not specify which of several acts constituted fourth degree assault, the provoking act also was the charged act. But as noted above, the rule that the provoking act cannot be the charged act does not apply when "the defendant engaged in a course of aggressive conduct." *Grott*, 195 Wn.2d at 271. The evidence here shows that Bousquet engaged in a course of aggressive conduct.

We hold that the trial court did not err in giving the first aggressor instruction.

B.        PROSECUTORIAL MISCONDUCT

Bousquet argues that the prosecutor committed misconduct during closing argument by telling the jury that its job was to decide what happened on the night in question. We conclude that even if the prosecutor's statement was improper, Bousquet failed to object and he cannot show that the error was incurable.

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the record and all of the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). When the defendant fails to object at trial, we apply a heightened standard of review where the defendant must also show that the prosecutor's misconduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *Id.* at 709 (quoting *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)). "In other words, the defendant who did not object must show the improper conduct resulted in incurable prejudice." *Zamora*, 199 Wn.2d at 709.

During closing argument, it is improper for a prosecutor to misstate the State's burden of proof. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). It also is improper for a prosecutor to misstate the jury's role during deliberations. *See State v. Crossguns*, 199 Wn.2d 282, 297, 505 P.3d 529 (2022). For example, a prosecutor cannot "ask the jury to decide who was telling the truth." *Id.* " 'The jury's job is not to determine the truth of what happened . . . . Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt.' " *Id.* at 298 (quoting *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012)).

Here, the prosecutor stated that it was the jury's "job" to "decide what happened." 2 RP at 539. But that is not the jury's job. The jury's job is to "determine whether the State has proved the offenses beyond a reasonable doubt." *Crossguns*, 199 Wn.2d at 299.

But even if the statement was improper, Bousquet did not object. And he has failed to show that an instruction could not have cured any prejudice. Had Bousquet objected, " 'the court could have properly explained the jury's role and reiterated that the State bears the burden of proof and the defendant bears no burden. Such an instruction would have eliminated any possible confusion and cured any potential prejudice stemming from the prosecutor's improper remarks.' " *Id.* at 300 (quoting *Emery*, 174 Wn.2d at 764).

We hold that Bousquet's prosecutorial misconduct claim fails.

CONCLUSION

We affirm Bousquet's fourth degree assault – domestic violence conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
VELJACIC, J.